### H. A. JONES v. C. R. SMITH.

Decided June 3, 1899.

1. **Practice—Opening and Conclusion.**

A defendant is not entitled to open and conclude the argument to the jury where the admission required by the statute to secure that right was made by him, but was subsequently withdrawn and not renewed.

2. **Same—Applause in Courtroom.**

A judgment in a civil action will not be reversed because of the presence inside the bar and the applause of bystanders during the closing argument in the trial below, where the presiding judge promptly commanded the observance of order and thus put an end to the demonstrations.

3. **Same—Misconduct of Counsel.**

Abusive and threatening language by plaintiff while on the witness stand towards the defendant and his attorneys, with like conduct of his counsel in the argument of the case, however reprehensible, will not of itself warrant a reversal where no objections on this account were made at the time, and the evidence fully sustains the verdict and judgment.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Geo. H. Culp* and *Davis & Garnett*, for appellant.

*J. W. Bailey, Stuart & Bell,* and *C. R. Pearman*, for appellee.

STEPHENS, ASSOCIATE JUSTICE.—Quoting from appellant's brief, "this was an action by appellee Smith against the appellant Jones, seeking judgment upon four notes aggregating about $1000, and to foreclose a pledge of $1000 of the capital stock of the Commercial Publishing Company, of Memphis, Tenn. The trial, on November 19, 1898, resulted in a judgment in favor of the appellee for $1085.64, and foreclosing the pledge as to three of the notes."

These notes were all given for money borrowed of Smith by Jones to enable the latter to purchase certain interests in a mining lease on Beacon Hill, Cripple Creek, Colo., known as the Lindsey or Gladden lease No. 3, and to pay his portion of the expenses incurred in developing the mine. Jones' purchases were made through and from W. T. Roberts, Smith also becoming a purchaser. These purchases began in the early part of May, 1897, and the lease had until October following to run. The development of the mine was at once undertaken by Smith, Jones, and others, under the firm name of C. R. Smith & Co., Smith being the first in charge, and then Jones. The mine proving worthless, the undertaking was finally abandoned, after considerable money had been expended both by Smith and Jones in the effort to develop it.

Recovery on these notes was resisted by Jones substantially upon the ground that Smith and Roberts had confederated to deceive and mislead him, their alleged purpose being to exploit a worthless mine, and that he was not only thus induced to borrow the money and purchase interests in the lease, believing the mine to be valuable, but also to contribute to the expense of exploiting it under the belief that an honest effort was being made to develop it. The further charge was made against Smith of a fraudulent misapplication to the development of lease No. 2, in which he had some sort of interest, but in which Jones had none, of the money furnished to develop lease No. 3. Negligence was also charged against him in the manner of disbursing the money.

These defenses were met with a general and specific denial of the charges made, and the contention arose that appellant acted with full knowledge of the facts and upon his own judgment in the premises, he having first gone upon the ground and investigated the mine for himself.

The issues so made were submitted to the jury in a charge which we approve as being both correct and applicable to the facts of this case. Whether or not Smith alone or in connection with Roberts dealt fraudulently with Jones, and whether or not Jones was deceived by Smith and Roberts or was self-deceived, were the controlling isues submitted by the charge, together with that of a negligent or reckless spending of the common funds by Smith. While not specifically naming every issue raised, the charge was sufficiently comprehensive to include them all, or if not, the finding of the jury against appellant upon the main issues had the effect of a finding against him upon every subordinate question.

The result of our deliberation, after a careful reading of the statement of facts, is that the evidence not only warranted the jury in finding against appellant upon each of the issues submited to them, but also that it required them to find that appellant had invested his money upon his own judgment; that is, the evidence left no room for any other verdict upon that issue. Such is our construction of his testimony.

These conclusions dispose of all the complaints made against the action of his honor in giving and refusing charges, if not of all others.

There is nothing in the contention that appellant was entitled to open and conclude the argument. The admission required by statute in order to secure that right was first made by him, but was withdrawn and not again renewed. Besides, he resisted on the trial the foreclosure of the lien claimed by appellee upon the Memphis stock as to one of the notes, and to that extent prevailed in the verdict.

Nor do we attach any importance to the objection made to the presence inside the bar and the applause of the bystanders during the closing argument of one of appellee's counsel, since the presiding judge promptly commanded "the observance of order," and thus put an end to the demonstrations of applause.

The behavior or rather misbehavior of appellee on the witness stand, followed by like, if not worse, conduct on the part of another of his counsel in argument, as set forth and complained of in appellant's brief, was,

in our opinion, extremely reprehensible and should not have been tolerated. But whether it should of itself operate a reversal of the judgment is another question. It will be seen from our conclusions of fact that the verdict rendered was not only in accordance with the great preponderance of the evidence, but that any other verdict would perhaps not have been sustained by the evidence; nor is any complaint made of the verdict as not being sustained by the evidence. In addition, no effort seems to have been made by appellant's counsel to avail himself of the remedy given him by law by objecting at the time to put a stop to the threatening and abusive language indulged in by the appellee and his counsel towards appellant, or rather towards his counsel. Indeed, the course pursued by appellant's counsel in the cross-examination of appellee, and the manner of his reply to the tirade of appellee's counsel, together with his failure to interpose any objection at the time, were suggestive of a willingness on his part to accept the very objectionable method of trial now complained of and take chances as to the result thereof.

We are therefore of opinion that we would not be warranted in reversing this judgment on account of the ugly manner in which an irrelevant side issue was introduced and tried between appellee and appellant's counsel. It is not unfrequently the case that such gross misbehavior as is complained of is more calculated to injure the cause of the aggressor than of him who is so ruthlessly assailed with abusive and insulting epithets, and the practiced advocate is therefore sometimes more than willing to have the trial take such a course; but having thus taken chances upon the result, he should not be heard afterwards to complain if unsuccessful in the issue.

The misconduct of the foreman of the jury is also complained of, but in view of his explanation we are not prepared to hold that the court abused his discretion in overruling the motion for new trial upon this ground.

These conclusions lead to an affirmance of the judgment.

*Affirmed.*

Writ of error refused.